**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

EDWARD H. FLINT                                                                                          PLAINTIFF

V.                                                                                                      NO. 3:07CV-600-R

TARGET CORPORATION                                                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

      Mr. Flint and Target Corporation have filed what essentially are cross-motions pertaining to the same discovery. Target has filed a motion for a protective order (docket no. 36), asserting that plaintiff continues repeatedly to serve interrogatories and requests for production of documents pertaining to the information that has already been supplied. Mr. Flint, for his part, has filed a motion to compel (docket no. 44), in which he asserts that the repeated requests have been necessary because he has not received, or Target has not in fact produced, the information or documents it claims to have provided him.

      The court has reviewed the motions and all responses and exhibits thereto, and notes that, although Mr. Flint has tendered several specific requests, he is seeking information and documentation regarding one general issue relevant to his claims. Simply put, Mr. Flint wants to know whether the pills he was supplied contained any putatively inactive ingredient that is harmful to human health, or whether the pills may have been adulterated in any way post-manufacture or post-distribution. To that end, he has tendered myriad discovery requests designed to elicit two distinct categories of information.

**I.**

First, Mr. Flint repeatedly has asked for all information and documents in Target's possession, custody or control regarding the specific ingredients contained in the Pyridium pills dispensed by Target and used to fill his initial prescription and two subsequent refills. In particular, Mr. Flint repeatedly has requested copies of all qualitative analysis or other laboratory testing results regarding certain specific pills. These pills were either included in the refill that allegedly caused Mr. Flint to have an allergic reaction or were from the same batch that was stored at Mr. Flint's local pharmacy and used to supply the refill.

Target has repeatedly stated in pleadings filed with the court and served on Mr. Flint that the local store's pharmacy manager "sent the pills to Breckinridge for testing[, and t]he results of the test were supplied to the Plaintiff and they confirmed that the pills dispensed to the Plaintiff conformed with FDA standards." *See, e.g.,* Def's Mot. Summ. J. at 2 (docket no. 48); *see also*, *e.g.,* Resp. No. 2 to Pl's First Set of Requests for Production of Documents and Answer No. 1 to Pl's First Set of Interrogatories. Target directs plaintiff's and the court's attention to a Quality Control Laboratory Test Report from Contract Pharmacal Corporation (the "CPC QC Report"), which it implies constitutes the qualitative analysis of those specific pills.

Target's representations to the court and to Mr. Flint cause the court concern. The statements imply, if not arguably state, that Target sent a representative sample of the pills in its possession and used to fill Mr. Flint's prescription to Breckinridge for testing, that those pills were in fact tested, and that Mr. Flint was sent a copy of the test results pertaining to the specific pills that had been sent to Breckinridge by Target. The problem with these statements is that they seem to be misleading and appear to the court to be untrue. The only test results referenced

-2-

by Target, either in its pleadings, or in open court, have been those contained in the CPC QC Report. That report, however, could not have been an analysis of the specific pills sent to Breckinridge by Target, as Target claims. Mr. Flint's prescription was not filled until December 2006, and he did not raise the issue of his alleged allergic reaction with Target, until after he had taken several of the pills. The CPC QC Report, however, pertains to an analysis of pills from a particular lot, which may indeed be the same lot of medication that was ultimately dispensed to Mr. Flint, but the analysis was performed in **September 2006.** Accordingly, the test results provided to Mr. Flint are not an analysis of the specific pills returned to Breckinridge by Target, and could not reasonably have been offered as such, but appear to be merely the results of a random lot sample performed pre-distribution by the manufacturer as part of its required FDA compliance efforts.

The court has accepted the representation of Target's counsel, as an officer of the court, that the CPC QC Report is the only laboratory analysis in Target's possession, custody, or control, and the court has no reason to doubt the veracity of this statement. That does not, however, address what seem to be Target's misleading statements regarding what the CPC QC Report actually represents. Although given ample opportunity by the court during its recent hearing, at which this issue, and Mr. Flint's concerns about it were discussed at some length, Target's representative did nothing to clarify the matter.[1] Target must do so now, **within ten days of the date of entry of this order**. Either Target sent specific pills to the manufacturer or

---

[1] In fairness, the court was not aware of the date on the CPC QC Report at the time of Target's counsel's representation during the discovery hearing on June 9, 2008, and thus did not press Target's counsel about that specific point. Nevertheless, the source of Mr. Flint's concern regarding the discrepancy between Target's representations and its supplied documentation is clear from his pleadings and would have been clear during the hearing with anyone knowledgeable about the contents of the report.

-3-

distributor for testing and has the results of the qualitative analysis pertaining to those actual pills, or it does not. Either way, it cannot continue to represent to Mr. Flint and to the court, either directly or by implication, that the CPC QC Report constitutes qualitative analysis of the specific pills sent off for testing by Target, unless the court has misunderstood something.

In addition, Target shall review any other statements in its discovery responses or pleadings with the court regarding the contents of the other manufacturer's pills supplied to Mr. Flint. **Within <u>ten days</u> of the date of entry of this order**, Target shall clarify, supplement, or revise its discovery responses or pleadings as necessary, including supplying copies to Mr. Flint of any qualitative laboratory analysis that might be in Target's possession, custody, or control, regardless of whether that analysis pertains to the Qualitest or the Breckinridge pills.

**II.**

The second general area of legitimate inquiry about which Mr. Flint asserts he has not received complete information pertains to any quality control or quality assurance policies used by Target to confirm or otherwise ensure that medication supplied to Target not only complies with FDA regulations and manufacturing specifications, but also contains no inactive, but potentially harmful ingredients. For want of a better phrase, the court will refer to this as the "Quality Assurance Issue." Plaintiff has asked for this information repeatedly, and in several different ways. Some of the information, specifically a copy of Target's "Pharmacy Quality Program," may indeed have been sent to Mr. Flint. He has represented, however, that he did not receive a copy of the document. Accordingly, Target shall provide him with another one. The rest of Target's answers and responses regarding the Quality Assurance Issue are not as full, fair, and complete as the court would ordinarily expect from experienced counsel. Accordingly, the

court will direct Target to review its discovery responses pertaining to Mr. Flint's Quality Assurance Issue requests and **within ten days of the date of entry of this order** provide more specific information and documentation.  Target shall limit its objections to those that are made in good faith and are narrowly drawn.   The court agrees with Target that it is not required to provide Mr. Flint with responses that constitute legal conclusions, but many of its other objections and responses are not as specific as the discovery rules contemplate.

### III.

Accordingly, for the reasons stated in this memorandum opinion, **IT IS HEREBY ORDERED** that Target's motion for a protective order is **DENIED** (docket no. 36), and plaintiff's motion to compel (docket no. 44) is **GRANTED IN PART**.  Target shall amend, clarify, or supplement its responses to the discovery identified in plaintiff's motion to compel, and its motion for summary judgment, within the time frames specified and to the extent discussed in the foregoing opinion.

DATE:


cc:     plaintiff, *pro se*
        counsel of record