# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

EDWARD H. FLINT                                                    PLAINTIFF

V.                                          Civil Action No. 3:07CV-00600-R

TARGET CORPORATION                                                DEFENDANT

## <u>MEMORANDUM OPINION</u>

In this action, the plaintiff, Mr. Edward H. Flint, is suing Target Corporation *pro se*[1]

because he experienced a negative physiological reaction after taking some medication

dispensed by his local Target pharmacy.  Mr. Flint believes that the negative reaction was

directly caused by some pills dispensed by the Target pharmacy, and suspects the pills contained

one or more harmful ingredients.  In response, Target asserts that it correctly filled and dispensed

Mr. Flint's prescription in accordance with his doctor's directions, and that there exists no

evidence either that: (a) Mr. Flint's alleged reaction was caused by the pills in question, or (2)

that the pills dispensed improperly contained harmful ingredients.   Accordingly, Target has filed

a motion for summary judgment of Mr. Flint's claims.

The Court has reviewed Target's motion, Mr. Flint's response thereto, and the evidence

of record in this case.  While the Court is not without sympathy to Mr. Flint's past physical

discomfort, or his frustration over what he believes to be poor customer service taken to a

potentially harmful extreme,[2] it observes that any recovery to be had would come from the

---

[1]*Pro se* is a Latin adjective meaning "for self," and a short and convenient phrase courts use to describe a person who represents himself in a legal proceeding without the aid of an attorney.

[2]In making this observation, the Court does not mean to imply that it is this Court's official

(continued...)

manufacturer or distributor of the pills, not Target.

In Kentucky, there are two possible theories of recovery against pharmacists who dispense allegedly harmful medication: negligence and product liability. In this matter, there exists no genuine issue of material fact that would permit plaintiff to proceed to trial against Target on either claim. Accordingly, for the reasons stated herein, the Court will grant Target's motion for summary judgment and dismiss this action.

## I.

The facts about which the parties agree or, where disagreements exist, viewed in the light most favorable to Mr. Flint, are as follows. In November 2006, Mr. Flint's surgeon issued Mr. Flint a prescription for Pyridium (generic name: phenazopyridine) following surgery on Mr. Flint's prostate gland. Pyridium is an analgesic used to relieve symptoms of urinary tract discomfort. Mr. Flint took the prescription, which called for an initial supply and two refills, to his local Target pharmacy to be filled. The first supply of the drug was dispensed on November 16, 2006, in its generic form. The first refill, also in generic form, was dispensed by the same Target pharmacy on November 24, 2006. The second refill, also in generic form, but manufactured by a different company, was dispensed on December 6, 2006, again by the same Target pharmacy. Each time the prescription was dispensed, it was accompanied by a patient information sheet which listed several possible contraindications, side effects (including headache, mild itching, and stomach cramps), and possible indicia of an allergic or negative

---

[2](...continued)
opinion that Target did, in fact, demonstrate poor customer service, much less that it is this Court's official opinion that Target made decisions that put the health or safety of its customers at risk. Rather, the Court is simply observing that Mr. Flint clearly, and earnestly, believes that Target did. As with much of life, there are the rare extremes of indisputable fact on one side and unfounded perception on the other, and then there is the large middle ground in between that consists of varying combinations of the two, neither of which can be dismissed without appropriate consideration and explanation when reaching a judgment.

physiological reaction (specifically blue or purple skin color, decreased urination, vomiting, yellow skin or eyes, rash, itching, swelling, dizziness, or trouble breathing).

On December 11, 2006, Mr. Flint reported to the pharmacy manager, Mr. Robert Wolford, that he had experienced what he believed to be an allergic reaction to the pills contained in the second refill – itchy hives and bumps inside his mouth, a numb tongue, and a loss of taste.  Mr. Wolford examined the prescription and determined that there had been no error in the *filling* of the prescription.  In other words, Mr. Wolford confirmed that the drug Pyridium had been dispensed to Mr. Flint (albeit in its generic form, phenazopyridine) and the dosing instructions had been issued in accordance with Mr. Flint's surgeon's instructions.  Mr. Wolford instructed Mr. Flint to stop taking the medication, however, and told him to call his surgeon.  Mr. Wolford also gave Mr. Flint Target's national customer service number and the names of, and contact information regarding, the two companies who had manufactured the pills dispensed to Mr. Flint.  Lastly, Mr. Wolford refunded Mr. Flint's money and gave Mr. Flint a list of the inactive ingredients in the pills sold by Breckinridge Pharmaceutical, the company that had manufactured the pills in the second refill, which contained the pills Mr. Flint was taking when he experienced a negative physiological reaction.

Thereafter, Mr. Flint attempted to resolve his concerns directly with Target's customer service department.  The experience was not to Mr. Flint's liking.  He perceived that Target's customer service agents were not being appropriately responsive to his concerns and were not being sufficiently helpful to his efforts to determine the cause of his reaction.  Correctly or incorrectly, this led Mr. Flint to his now firmly-held belief that Target places greater emphasis on profit than customer health and, therefore, does not employ appropriate internal control measures sufficient to ensure that it only purchases quality pharmaceutical supplies from the

manufacturers and distributors with whom it does business.  He believes that there was some unidentified allergenic or otherwise harmful ingredient in the pills manufactured by Breckinridge Pharmaceutical that caused him to have an allergic reaction, not properly described as a risk on the patient information handouts provided to him when his prescription was dispensed.  Hence this lawsuit.

Because Mr. Flint is proceeding without an attorney, his causes of action are not presented in the customary fashion.  That is to say, his specific legal claims are not identified and isolated from his general allegations.  Rather, Mr. Flint's Complaint is presented in narrative form, as a series of complaints.  This is not impermissible, or even atypical of Complaints filed *pro se*, but it nevertheless does pose some difficulty for the Court and for opposing counsel, who must attempt to liberally construe Mr. Flint's narrative and discern discrete, actionable claims amongst the general prose.

In its motion for summary judgment, Target has construed the Complaint as seeking relief under the theories of negligence and product liability.  This comports with the Court's reading of the Complaint,[3] and its understanding of potential theories of recovery available to Mr. Flint under Kentucky law.   Accordingly, the Court will now evaluate each cause of action, and determine whether Target's request for summary judgment should be granted or denied.

## II.

It should be well known to all in the legal community by now, but because Mr. Flint is acting as his own counsel, it bears repeating that summary judgment as a matter of law is proper

---

[3]Mr. Flint filed his initial Complaint in Jefferson Circuit Court on October 10, 2007, and it was removed to federal court on October 30.  On June 16, 2008, after Target had moved for summary judgment, he filed a motion requesting leave to file an amended complaint.  That motion has not been granted and, although it contains additional narrative, the tendered Amended Complaint does not contain additional causes of action, nor would it change this Court's substantive analysis.

only where there exists no *genuine* issue of *material* fact. FED. R. CIV. P. 56(c)(emphasis added). In considering a motion for summary judgment, this court must construe the evidence and draw all reasonable inferences in favor of the non-moving party (in this case, Mr. Flint), *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The party bearing the burden of proof on a particular issue – regardless of whether he is the movant or non-movant – cannot rely on mere allegations or conclusory statements, however. *See Maki v. Laako*, 88 F.3d 361, 364 (1996). Whereas a *pro se* Complaint will be liberally construed and may be presented in narrative form, proof of a *pro se* plaintiff's allegations is a different matter. To defeat Target's motion for summary judgment, Mr. Flint must point to in the record, or proffer, actual evidence. *Id.* What's more, the evidence he proffers must fit within certain parameters. It must be "of an evidentiary quality [*i.e.,* capable of being admitted at any trial of the matter] that demonstrates the existence of a genuine issue of material fact." *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997)(emphasis and bracketed explanation added). To be of evidentiary quality, "[t]he proffered evidence need not be in admissible form, but its content must be admissible." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)(emphasis in original omitted)).

With that general explanation in mind, the Court will turn to Mr. Flint's claims.

### A.    Negligence

Mr. Flint asserts that Target was negligent in its dispensing of his second refill. To successfully prosecute a claim of negligence, a plaintiff must establish the following four

elements of that claim, that the Court will describe in terms particular to Mr. Flint's allegations:

1. That Target owed Mr. Flint a duty of care,

2. That Target breached that duty,

3. That Mr. Flint suffered injury, and

4. That the injury he allegedly suffered was directly or proximately caused by Target's breach of its duty of care.

*See, e.g., Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992).  This, of course, begs the question: What is the specific duty of care owed by pharmacists to their customers?  In Kentucky, the care owed is the duty of care used by ordinarily skillful and prudent pharmacists under similar circumstances – that is, to dispense the correct medication in accordance with the prescribing physician's instructions.  *See Ohio County Drug Co. v. Howard*, 256 S.W. 705 (Ky. 1923)(older, but still good, common law).  All of the evidence presented, even when construed in the light most favorable to Mr. Flint, indicates that Target did just that.  Moreover, not even Mr. Flint disputes that Target dispensed phenazopyridine (Pyridium) pills in the correct dosage with the correct instructions for their use.  Accordingly, putting aside the question of whether Mr. Flint proffered sufficient evidence that the physiological reaction he experienced was caused by the phenazopyridine pills he purchased at Target,[4] and not a reaction to a food or another type of medication he was taking, or even a reaction to another substance in his home or work environments, he cannot establish a key element of his negligence claim, namely that Target breached the duty of care it owed him when

---

[4]The evidence proffered indicates that Dr. Kuhn, Mr. Flint's physician and expert witness, testified that he cannot be certain that phenazopyridine caused Mr. Flint's reaction.  He further testified that he recommended that Mr. Flint consult with another specialist, Dr. Fowler, who might be able to isolate the cause of Mr. Flint's allergic reaction.  There is no evidence that Mr. Flint ever sought Dr. Fowler's assistance, or consulted with any other specialist capable of opining with a reasonable degree of certainty about the cause of Mr. Flint's symptoms.

filling and re-filling his prescription.  Target is therefore entitled to summary judgment of this claim.

### B.      Product Liability

The more complicated question is whether Mr. Flint has alleged a viable product liability claim against Target.  Mr. Flint believes that the pills contained in his second refill, *i.e.* those manufactured by Breckinridge Pharmaceutical, may contain one or more inactive ingredients that are either inherently harmful or capable of causing allergic reactions such as the ones he allegedly experienced.  In other words, he is asserting that Target sold him a defective product.

Generally speaking, anyone in the stream of commerce – from the manufacturer, to the distributor, to wholesaler, to the retailer – is *potentially* strictly liable for damages caused by a defective product.  There are limits, however.  As a matter of Kentucky statutory law, if the manufacturer of a defective product is identified and subject to the jurisdiction of the court, then the "middlemen" – namely those in the stream of commerce between the person who made the product and the ultimate consumer – such as distributors and retailers – are not potentially liable for harm caused by the allegedly dangerous product *unless* the product was altered from its original manufactured condition or packaging, *or* the "middleman" either (a) breached an express warranty or (b) "knew or should have known at the time of distribution or sale of such product that the product was in a defective condition unreasonably dangerous to the user or consumer."  *See* Ky. Rev. Stat. §411.340.

The first issue, of course is whether the manufacturer of the product has been identified. It has.  Target identified Breckenridge Pharmaceutical as the manufacturer of the phenazopyridine dispensed to Mr. Flint in his second refill of his prescription, and Mr. Flint has neither disputed this in his pleadings, nor proffered evidence to the contrary.   The next issue is

whether Breckinridge is subject to the jurisdiction of this Court.  It is, because it contracted to supply phenazopyridine to Target pharmacies in the Commonwealth.  *See* Ky. Rev. Stat. 454.210; *see also Intera Corp. v. Henderson III*, 428 F.3d 605, 615 (6th Cir. 2005)(discussing the circumstances under which a company may be subject to the jurisdiction of this Court).   The Court is thus left to ponder whether there is admissible evidence indicating that the pills sold to Mr. Flint had been altered from their original condition by Target, whether Mr. Flint alleged (in layman's terms) that Target breached an express warranty to him, or whether there is admissible evidence indicating Target knew the pills it supplied him were in a defective, unreasonably dangerous condition.  If the Court answers "yes" to any of those three questions, Target may be liable to Mr. Flint.

With respect to the first question, this Court is not of the opinion that Kentucky courts would determine that a pharmacy's mere act of dividing and distributing drugs in doses is not sufficient to constitute an alteration of the drug's original condition or package.  *See  Smith v. Wyeth Inc.*, 488 F. Supp. 2d 625, 629 (W.D. Ky. 2007)(Russell, J.).  Something more, some active adulteration, is required.  There is no allegation, much less any evidence, that Target deliberately adulterated the drugs from Breckenridge, or otherwise mis-handled them in a manner capable of causing harm to a consumer.  Rather, Mr. Flint's allegation is that Target's fault stems from its decision to purchase the drugs from Breckenridge.  That is a different issue altogether, and will be addressed next.

This Court finds that, as a matter of law, Kentucky courts would agree with the majority of states which held that pharmacists are not liable for breach of either express or implied warranties with respect to the properties of particular drugs.  *See id*, 488 F. Supp. 2d at 629 (internal citations omitted).  Thus, even if Mr. Flint's allegations could be liberally construed to

include a claim for a breach of an express warranty with respect to the properties of the medicines it dispenses,[5] that claim would fail.

As for the third and last question, there simply is no evidence that the pills supplied by Breckenridge were in a defective, unreasonably dangerous condition.  Rather, the evidence presented indicates that they fell within manufacturing specifications.  There is no evidence to suggest that they had been altered, tampered with, or subjected to conditions that would have affected their chemical composition (*e.g.,* water, reactive chemicals), even from the testing facility to which Mr. Flint sent samples.  Mr. Flint suspects that Breckenridge's generic form of Pyridium may have contained an inactive ingredient that was harmful to him in the sense that it triggered an uncomfortable, and lasting allergic reaction that has affected his quality of life.  He may indeed be correct, but he has not responded to Target's request for summary judgment by providing the Court with the requisite evidence to prove that it did, however, and even if Mr. Flint could identify the putative allergen contained within the Breckenridge, that does not – without more specific proof  – establish that the pills in question were defective or unreasonably dangerous.  Target is therefore entitled to summary judgment in its favor with respect to Mr. Flint's second claim.

### III.

In reaching its decision, the Court is mindful that, while Mr. Flint may not have a cognizable claim against Target, he nevertheless has experienced a physiological reaction that

---

[5]This is the Court's best reading of Mr. Flint's allegations.  As noted previously, Mr. Flint believes that Target is not engaging in appropriate quality control in several areas ranging from its customer service, to its selection of suppliers, to its monitoring of the composition of the drugs it dispenses.  One way of looking at this complaint (little "c") is that it constitutes a breach of some duty of care to him, the customer.  That issue has already been dealt with *supra*.  Another way of reading the allegations is that they state a claim for breach of warranty that any medicines sold would not contain any unidentified allergenic or otherwise harmful ingredients.

has caused him sufficient discomfort to make him initiate and vigorously maintain a lengthy lawsuit that has drained time, energy and resources.   The Court is also mindful that several pending discovery motions recently were remanded pending the Court's adjudication of Target's Motion for Summary Judgment.  Mr. Flint will therefore likely feel that this Court's determinations are premature, and that he has been deprived of the opportunity to uncover sufficient evidence to make his case.   None of the discovery sought in the remanded motions would have materially affected this Court's determination, however.  Not all injuries are capable of redress by the courts, even if plaintiffs were permitted unlimited time and access to potential sources of proof.  This is not always easy for a lay person to understand.  Courts are supposed to right wrongs and they do, but only when and to the extent the law permits.

The Court will enter an order concurrently with this Memorandum Opinion that grants Target's Motion for Summary Judgment and dismisses Mr. Flint's claims.

DATE:


cc:     Edward H. Flint, *pro se*
        counsel of record